IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VALERIE ANN SCHNOVELL-MILLER,

    Plaintiff,

vs.

CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,

    Defendant.

No. 2:12-cv-321-EFB

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Presently before the court are the parties' cross-motions for summary judgment. For the reasons discussed below, the court grants the Commissioner's motion and denies plaintiff's motion.

////

////

---

[1] Michael J. Astrue, the previously named defendant, has been replaced by Carolyn W. Colvin, the current acting Commissioner of Social Security. Under Rule 25(d), Fed. R. Civ. P., Carolyn W. Colvin is automatically substituted as defendant in this action.

1

I. BACKGROUND

Plaintiff applied for DIB and SSI on June 13, 2008, alleging that she had been disabled since May 24, 2007. Administrative Record ("AR") 380. Plaintiff's applications were initially denied on July 21, 2008, and upon reconsideration on June 2, 2009. *Id*. at 54, 15, 21. On August 24, 2010, a hearing was held before administrative law judge ("ALJ") Theodore T. N. Slocum. *Id.* at 54-64. Plaintiff was represented by counsel at the hearing, at which plaintiff and a vocational expert ("VE") testified. *Id.*

On October 14, 2010, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(I), 223(d), and 1614(a)(3)(A) of the Act.[2] *Id.* at 64. The ALJ made the

---

[2] Disability Insurance Benefits ("DIB") are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id*.

2

following specific findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.
>
> 2. The claimant has not engaged in substantial gainful activity since May 24, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: mild diabetes mellitus, diabetic neuropathy, a right shoulder disorder and a mild major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> \*\*\*
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> \*\*\*
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the ability to lift 20 pounds occasionally and 10 pounds frequently; to stand or walk about 6 hours in an 8-hour day; and to sit for about 6 hours in an 8-hour day. The claimant has the ability to balance frequently; to climb ramps and stairs occasionally; and to stoop, kneel, crouch, crawl and reach overhead with the right upper extremity no more than occasionally. She is precluded from working on ladders, ropes or scaffolds. In addition, the claimant is able to learn, carry out, sustain concentration, persistence, pace and adaptation to only simple, non-hazardous substantial gainful activity. Her ability to relate to supervisors, co-workers and the general public is intact.
>
> \*\*\*
>
> 6. The claimant is capable of performing past relevant work as a cashier and a fast food worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> \*\*\*
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from May 24, 2007, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

*Id.* at 54-64.

Plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 11. However, on December 9, 2011, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. *Id.* at 5.

3

## II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. ANALYSIS

Plaintiff challenges the Commissioner at steps three, four, and five of the sequential evaluation process. Specifically, plaintiff argues that (1) the ALJ failed to properly evaluate the examining medical opinions of record; (2) the ALJ's residual functional capacity determination is erroneous; (3) the ALJ's determination that plaintiff can perform her past relevant work is erroneous; (4) the ALJ's determination that plaintiff can perform work existing in significant numbers in the national economy is erroneous; and (5) the ALJ's determination that plaintiff is not disabled is erroneous. Dckt. No. 15 at 5. However, all of those arguments are based on two primary contentions by plaintiff: (A) that the ALJ failed to correctly weigh the opinion of

plaintiff's treating physician's assistant, and (B) the ALJ failed to satisfy his duty to fully and fairly develop the record. *Id.* at 13-18.

      A.      <u>The ALJ Did Not Fail to Correctly Weigh Plaintiff's Treating Assistant's Opinion</u>

Plaintiff first contends that the ALJ erred by failing to correctly weigh the opinion of plaintiff's treating physician's assistant, Valerie Venghiattis. Dckt. No. 15 at 13-17. Ms. Venghiattis completed a physical residual functional capacity ("RFC") evaluation regarding plaintiff on August 6, 2009, noting that plaintiff had been treated at her clinic since March 12, 2001. AR 402, 405. Ms. Venghiattis listed plaintiff's diagnoses as difficult to control diabetes, (such that plaintiff may be prescribed an insulin pump), peripheral neuropathy, bilateral (b) shoulder pain, and hepatitis C with cirrhosis, also noting that plaintiff reported stabbing pains and numbness from her knees to her feet, based on lab tests and observation of decreased and painful shoulder range of motion of plaintiff. *Id.* at 402. Ms. Venghiattis opined that plaintiff could sit for 15-20 minutes at a time for a total of 4 hours over the course of an 8-hour workday, limited by leg numbness; stand/walk 10-15 minutes at a time for a total of 1 hour in a workday; never do any significant lifting with her left arm; occasionally lift 20 pounds with her right arm; never climb; occasionally balance, stoop, crouch, crawl, or kneel; was limited in reaching, handling, feeling, pushing, and pulling; subject to environmental restrictions against heights, heat, chemicals, and humidity; and needed to change positions frequently. *Id.* at 403-04. The assessments were based on medical findings of very limited range of motion in both shoulders. *Id.* at 404. Further, plaintiff's depression contributed to the severity of her symptoms and limitations; she often experienced symptoms severe enough to interfere with attention, concentration, and the ability to remember and carry out simple instructions; plaintiff was worsening; the above limitations had existed since prior to plaintiff's alleged onset of disability; and plaintiff experienced sleepiness as a side effect of her medication. *Id.* at 405.

Plaintiff argues that the ALJ failed to properly credit Ms. Venghiattis's opinion, even though Social Security Ruling ("SSR") 06-03p provides that "depending on the particular facts

in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' [such as a physician's assistant] may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source."[3] Dckt. No. 15 at 13 (quoting SSR 06-03p). SSR 06-03p adds: "[f]or example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." *Id.* Plaintiff contends that this is significant because the SSA favors the opinion of a treating physician over a non-treating physician, and the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies rejecting the opinion of a treating physician. *Id.* at 14 (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)); *Lester*, 81 F.3d at 830-31). Plaintiff contends, therefore, that under the provisions of SSR 06-03p, the opinion of a treating physicians' assistant may outweigh that of a nonexamining physician. *Id.* Plaintiff contends that is the case here, where the ALJ rejected Ms. Venghiattis's opinion, even though plaintiff had been treated at her clinic since 2001, and even though Ms. Venghiattis explained that her assessment of plaintiff's limitations was based on the objective findings from physical examinations and laboratory testing, and opined that the limitations she placed upon plaintiff had existed since 2006.[4] *Id.* at 14 (citing AR 402-05).

---

[3] "Medical sources who are not 'acceptable medical sources'" include "nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists." SSR 06-03p.

[4] As defendant notes, in addition to Ms. Venghiattis not being an acceptable medical source, it is not clear that Ms. Venghiattis was even plaintiff's "treating" physician's assistant or that they had a long-term relationship. Dckt. No. 19 at 15. Rather, although plaintiff testified that she had been going to Ms. Venghiattis' clinic since 2001, she also testified that she did not have a regular treating doctor, "[e]very time I go to the clinic, I get another doctor. They keep flip-flopping me all over this place, with different doctors, and different techs, and stuff." AR 602, 609. Plaintiff further testified that she did not request that Ms. Venghiattis specifically—or anyone else in particular— prepare a residual functional capacity assessment; instead, she simply "gave it to the receptionist" because she "didn't know who was supposed to exactly fill it out."

6

Plaintiff criticizes various aspects of the ALJ's reasons for giving less weight to the opinion of Ms. Venghiattis.[5] Dckt. No. 15 at 14-17. First, plaintiff contends that although the ALJ concludes that Ms. Venghiattis's opinions "are not consistent with substantial medical evidence of record, including the determinations made by examining physicians and by medical consultants employed by the state," AR 60, no state agency examining physician evaluated plaintiff's physical impairments, on which Ms. Venghiattis's RFC opinion is primarily based, and no other examining physician evaluated the cumulative impact of plaintiff's combined physical impairments, as required by 20 C.F.R. § 404.1523. Dckt. No. 15 at 14-15. Plaintiff therefore contends that the ALJ relied in part on nonexistent evidence ("examining physicians . . . employed by the state") in devaluing the physical RFC opinion of plaintiff's treating physician's assistant. *Id.* at 15.

Plaintiff argues that the only other grounds cited by the ALJ for giving less weight to Ms. Venghiattis's opinion than that of Dr. Amon is that when plaintiff was treated for abdominal pain in June 2010, she was noted to have normal musculoskeletal range of motion and normal affect and mood – referencing a single page of plaintiff's voluminous treatment records in isolation to support the conclusion that the limitations opined by Ms. Venghiattis "are not consistent with substantial medical evidence of record." *Id.* (citing AR 60-61, 520). However, plaintiff contends that her musculoskeletal range of motion and psychiatric condition are not relevant to the medical impairments cited by Ms. Venghiattis as the cause of plaintiff's physical limitations; instead, plaintiff's impairments stem primarily from her difficult to control,

---

*Id.* at 604.

[5] Plaintiff also criticizes a statement made by the ALJ during his questioning of plaintiff at the hearing. Dckt. No. 15 at 14. Specifically, plaintiff contends that the ALJ's statement that "[c]ounsel knows we don't have to respect the opinion of anything less than an M.D.," AR 604, not only "reflect[s] a misunderstanding of SSR 06-03p, but it contravenes the mandate of considering all evidence in the case record." Dckt. No. 15 at 14. However, the ALJ's written decision reveals that the ALJ does understand SSR 06-03p and did consider all of the evidence in the record.

insulin-dependent diabetes and associated peripheral neuropathy. *Id.* (citing AR 402, 584-85). Therefore, plaintiff contends that the ALJ's reason for rejecting Ms. Venghiattis's opinion is not "legitimate" because the ALJ failed to evaluate the assessment using the grounds on which it was based. *Id.* (citing *Orn v. Astrue,* 495 F.3d 625, 635 (9th Cir. 2007)).

Plaintiff also contends that although the ALJ relied upon a May 2009 opinion of Dr. Amon, a non-examining medical consultant (at Exhibit 15F, AR 431-35),[6] that opinion must be considered in relation to the evidence submitted after the opinion was made. Dckt. No. 15 at 15-16 (citing SSR 96-6p). Because the opinion predates plaintiff's hearing by 15 months, plaintiff argues that Dr. Amon failed to consider numerous significant treatment records, the opinion of Ms. Venghiattis, and the impact of further medical evidence regarding plaintiff's diabetes including increasing insulin-dependence, peripheral neuropathy, and diabetic foot ulcers; as well as her other physical impairments. *Id.* at 16. Plaintiff contends that Dr. Amon's rationale – "Review of symptoms was recently not indicative of chronic impairment" – is refuted by the opinion of Ms. Venghiattis and 15 months of records issued subsequent to Dr. Amon's opinion. *Id.* (citing AR 434). Plaintiff also contends that the ALJ's citation to Exhibit 4F/17 (AR 311), in giving Dr. Amon greater weight than Ms. Venghiattis, was improper because although the exhibit states that plaintiff was noted to ambulate without difficulty, that treatment note also states that an exhaustive musculoskeletal exam was not conducted. Plaintiff also again criticizes the ALJ for relying on a single treatment note in isolation in order to conclude that Dr. Amon's opinion was consistent with the record as a whole. Dckt. No. 15 at 16.

By arguing that the ALJ erred by failing to correctly weigh Ms. Venghiattis's opinion and RFC assessment, plaintiff is also essentially arguing that the ALJ's RFC finding was not

---

[6] In a Physical Residual Functional Capacity form dated May 26, 2009, Dr. Amon assessed plaintiff's physical limitations and found that plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit, with normal breaks, for about six hours in an eight-hour workday; climb ramps, stairs, ladders, ropes, and scaffolds occasionally; and reach overhead with the right upper extremity occasionally. AR 433, 60.

8

supported by sufficient evidence. As an initial matter, "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. § 416.946(c). Therefore, a claimant's RFC does not depend on any particular medical opinion, it depends on the ALJ's assessment of all the evidence. 20 C.F.R. § 404.1545(a).

Here, although plaintiff contends that the ALJ did not properly consider Ms. Venghiattis's opinion, the ALJ did consider that opinion, but determined that the opinion was entitled to less weight than the opinion of Dr. Amon and the other evidence in the record.[7] AR 60-61. The ALJ gave "great weight" to Dr. Amon's opinions because they were "consistent with the medical evidence of record as a whole" and because Dr. Amon "has a great understanding of the Social Security Administration disability programs and their evidentiary requirements and, thus, is very qualified to make such assessment." *Id.* at 60. The ALJ also noted as an example that Dr. Amon's opinions were supported by outpatient treatment records from Oroville Family Health Center, which indicated that plaintiff was able to ambulate without difficulty.[8] *Id.* (citing Ex. 4F/17, AR 311). Although plaintiff argues that reliance on Dr. Amon's May 2009 opinion was improper since that opinion predated plaintiff's hearing by 15 months, the ALJ did consider the other medical records from after Dr. Amon's opinion, as well as Ms. Venghiattis's August 2009 opinion (which notably, was formed only 3 months after Dr. Amon's opinion). AR 59-60. Moreover, as defendant notes, Dr. Amon's opinion is supported by other medical and treatment records. For example, despite Ms. Venghiattis's August 2009 opinion that plaintiff's range of

---

[7] Although plaintiff argues that the ALJ relied in part on nonexistent evidence by referencing "examining physicians. . . employed by the state," in devaluing Ms. Venghiattis's opinion, Dckt. No. 15 at 14-15, the ALJ actually referenced "examining physicians *and the medical consultants* employed by the state." AR 60. He did not actually reference state-employed examining physicians.

[8] Although plaintiff argues that the ALJ's citation to a prior unsigned state agency assessment was improper, Dckt. No. 15 at 17 (citing AR 400), the ALJ cited to a variety of other evidence in the record, as well as a *signed* report from Dr. Amon. AR 60.

9

motion in her shoulders was very limited, in February and June 2009, physicians found that plaintiff had full range of motion in both shoulders, and noted that even though plaintiff stated that she could only raise her arms to 120 degrees, "she clearly lifted [her] arms above her head." *Id.* at 181, 201. Also, in August and September 2009, shortly after Ms. Venghiattis's August 2009 notation that plaintiff has pain and numbness from her knees to her feet and Ms. Venghiattis's opinion that plaintiff could only stand or walk for one hour total in an 8 hour workday or 10-15 minutes continuously without changing positions, *id.* at 402, 404, plaintiff's physicians found that plaintiff had full strength and range of motion in both knees and only "slight" knee tenderness. AR 172, 175. Also, although plaintiff contends that the ALJ's citation to Exhibit 4F/17 was improper because the treatment note states that an exhaustive musculoskeletal exam was not conducted, the medical records still reveal that plaintiff was able to ambulate without difficulty, which was able to be discerned without an exhaustive musculoskeletal exam.

      The ALJ further found that Ms. Venghiattis's opinions were entitled to less weight because her conclusions, particularly those relating to plaintiff's ability to stand, walk, sit, and to perform simple tasks, were inconsistent with the medical evidence in the record. AR 60. As an example, the ALJ cited to June 2010 medical records from the UC Davis Health System, which revealed that although plaintiff had generalized abdominal pain, her musculoskeletal system had a normal range of motion and plaintiff was found to have a normal mood and affect. *Id.* at 60-61 (citing Ex. 20F/11, AR 520). Therefore, the ALJ gave less weight "to most of the opinions made by Ms. Venghiattis, including her determinations relating to [plaintiff's] ability to sit, stand and walk." *Id.* at 61. Although plaintiff argues that the ALJ's reference to Exhibit 20F/11 "in isolation" was improper, the ALJ referenced that exhibit as an *example* of a medical record that belies Ms. Venghiattis's opinions. Moreover, although plaintiff contends that the reference was also improper because plaintiff's musculoskeletal range of motion and psychiatric condition are not relevant to the medical impairments cited by Ms. Venghiattis as the cause of plaintiff's

physical limitations (which, instead stem primarily from her insulin-dependent diabetes and associated peripheral neuropathy), evidence that plaintiff had full range of motion is relevant to plaintiff's physical RFC, upon which Ms. Venghiattis opined.

Therefore, not only did the ALJ properly consider Ms. Venghiattis's opinion under SSR 06-03p, but he also properly relied on Dr. Amon's opinion that plaintiff could perform a range of light work. *See* 20 C.F.R. §§ 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); 416.927(c)(4) (same). Dr. Amon's opinion, which was supported by objective medical evidence, as well as the various treating documents that he relied upon, constitute substantial evidence. 20 C.F.R. § 404.1513(c) (findings by state agency physicians constitute proper evidence from non-examining sources); SSR 96-6p ("State agency medical . . . consultants are highly qualified physicians . . . who are experts in the evaluation of the medical issues in disability claims."); *Thomas v. Barnhart*, 278 F.3d 948, 957 (9th Cir. 2002) ("opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record").

B.     The ALJ Did Not Fail to Satisfy His Duty to Fully and Fairly Develop the Record

Plaintiff also argues that the ALJ erred by failing to satisfy his duty to fully and fairly develop the record, noting that "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Dckt. No. 15 at 17-18 (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). Plaintiff contends that the ALJ neither fully nor fairly developed the record since no "acceptable medical source" reviewed plaintiff's updated treatment records, and the only medical professional to consider the critical updated evidence was treating physician's assistant Venghiattis. *Id.* Plaintiff argues that if the ALJ felt that Venghiattis's opinion was inadequate, he should have ordered a consultative examination of plaintiff to evaluate all the medical evidence of record and to examine plaintiff to determine the extent of her impairments, including those due to her diabetic peripheral neuropathy. *Id.*

11

1  According to plaintiff, when her counsel proposed that the ALJ order a consultative examination,
2  because it was not plaintiff's fault that her treating medical facility "only allows them to see a
3  doctor once a year and the rest of the time nurse practitioners," AR 627, the ALJ indicated that
4  he understood the predicament, yet did nothing to assist plaintiff in substantiating her disability
5  and ensuring her interests were adequately protected. AR 627.

6  Defendant disagrees, arguing that the ALJ was not obligated to order more medical
7  evidence sua sponte. Dckt. No. 19 at 17 (citing 42 U.S.C. § 423(d)(5)(A); 20 CFR § 404.1519a).
8  Instead, defendant contends that the ALJ's duty to develop the record is only triggered if the
9  record is insufficient or if there is a conflict or ambiguity in the record, which was not the case
10 here. *Id.* (citing 20 C.F.R. § 404.1519a; *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir.
11 2001) (duty to develop "triggered only when there is ambiguous evidence or when the record is
12 inadequate to allow for proper evaluation of the evidence")).

13 As defendant argues, a consultative examination may be purchased "to try to resolve an
14 inconsistency in the evidence, or when the evidence as a whole is insufficient to . . . make a
15 determination or decision on [a] claim." 20 C.F.R. § 404.1519a(a). Examples of when a
16 consultative examination to secure needed medical evidence may be purchased include claims
17 where the additional evidence needed is not contained in the medical records; the evidence that
18 may have been available from a claimant's treating or other medical sources cannot be obtained;
19 necessary highly technical or specialized medical evidence is not available from a claimant's
20 treating physican or other medical sources; or there is an indication of a change in a claimant's
21 condition that is likely to affect the ability to work, but the current severity of a claimant's
22 impairment is not established. *Id.* § 404.1519a(b); *see also Reed v. Massanari*, 270 F.3d 838,
23 842 (9th Cir. 2001) (Commissioner has broad latitude in ordering consultative examination).
24 Here, none of those situations was present. To the contrary, as defendant notes, the 628-page
25 record contained nearly 400 pages of various medical reports from plaintiff's examining
26 physicians and medical personnel. Moreover, the Commissioner did assist in developing the

record by obtaining all of plaintiff's treatment records and arranging for an evaluation by Dr. Amon, a reviewing medical consultant. The ALJ properly considered and weighed all of the evidence, including Ms. Venghiattis's RFC form, Dr. Amon's report, and the medical reports from plaintiff's examining physicians. Because there was no ambiguity or inadequacy in the record, the ALJ satisfied his duty to fully and fairly develop the record and did not err by failing to order a consultative examination.[4]

IV. CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence and is based on the proper legal standards. Therefore, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: March 29, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[4] In her opposition to defendant's motion for summary judgment, plaintiff notes that she "does not argue, as Defendant asserts, that the ALJ had a duty to create more evidence, but rather that Ms. Venghiattis, at whose clinic Plaintiff was consistently treated, was in a better position than a nonexamining medical consultant to assess Plaintiff's impairments, and that if the ALJ felt her opinion was inadequate, it would have been more fair to Plaintiff to have an expert review all the evidence of record, including the opinion of Ms. Venghiattis, instead of relying on a nonexamining source who reviewed neither Ms. Venghiattis's opinion or 15 months of records issued subsequent to his opinion." Dckt. No. 21 at 8-9. Therefore, it appears plaintiff concedes that the ALJ did not *err* by failing to create more evidence. Rather, plaintiff reiterates her argument that the ALJ erred by failing to give the proper weight to Ms. Venghiattis. As discussed above, plaintiff has not demonstrated that to be the case.